# United States Court of Appeals
## For the First Circuit

No. 02-1281

UNITED STATES OF AMERICA,

Appellee,

v.

THOMAS RONALD THEODORE,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

(Hon. Reginald C. Lindsay, U.S. District Judge)


Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Stahl, Senior Circuit Judge.


Raymond J. Rigat, with whom Gilbride & Rigat was on brief for
Defendant-Appellant.
Paul G. Levenson, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, and Adam J.
Bookbinder, Assistant United States Attorney, were on brief for
Appellee.


December 12, 2003

**STAHL**, <u>Senior Circuit Judge</u>. Defendant-appellant Thomas Ronald Theodore appeals from his conviction and sentence on nine counts of mail fraud, in violation of 19 U.S.C. § 1341, and three counts of violating the Food Drug and Cosmetic Act, 21 U.S.C. §§ 331(a), (d), & (p). He contends that the district court erred: (1) when it denied defense counsel's motion to withdraw and request for a continuance; (2) when it did not declare mid-trial a mistrial <u>sua sponte</u>; (3) when it did not conduct an evidentiary hearing on Theodore's post-trial motion for a new trial and denied his motion for a new trial based on ineffective assistance of counsel; and (4) when it ordered restitution to victims without holding an evidentiary hearing. Because this case presents serious claims of ineffective assistance of counsel, we remand for an evidentiary hearing on Theodore's post-trial motion for a new trial based on ineffective assistance.

We note that the almost universal rule in these cases is that petitioners cannot raise ineffective assistance of counsel claims for the first time on direct review, the concern being that there is often no opportunity to develop the necessary evidence where the claim is first raised on direct appeal. <u>See</u> <u>Ellis</u> v. <u>United States</u>, 313 F.3d 636, 652 (1st Cir. 2002); <u>United States</u> v. <u>Knight</u>, 37 F.3d 769, 774 (1st Cir. 1994); <u>United States</u> v. <u>Jadusingh</u>, 12 F.3d 1162, 1169-70 (1st Cir.1994); <u>United States</u> v. <u>Mala</u>, 7 F.3d 1058, 1063 (1st Cir.1993), <u>cert.</u> <u>denied</u>, 511 U.S. 1086

-2-

(1994). This rule does not apply in this instance because the record here is sufficiently developed to warrant further consideration of the previously raised issue of ineffective assistance of counsel as the entirety of the appeal revolves around the question of whether Theodore's counsel was ineffective within the strictures of Strickland v. Washington, 466 U.S. 668 (1984). See United States v. Sotomayor-Vazquez, 249 F.3d 1, 13 (1st Cir. 2001); United States v. Ademaj, 170 F.3d 58, 64 (1st Cir.), cert. denied, 528 U.S. 887 (1999).

Here, we have a series of claims implicating the effectiveness of counsel and enough indicia of ineffectiveness to warrant remanding for an evidentiary hearing on Theodore's motion for new trial. We stress that we are not deciding whether the totality of the circumstances in this case amounts to ineffective assistance. Rather, we remand to the district court where it can determine in the first instance whether defense counsel's total performance was such that a new trial is warranted.

I. BACKGROUND

From 1992 until approximately April 1995, Theodore and Thomas Rodgers, Jr. solicited about $1.6 million of investments in a company called Private Biologicals Corporation (PBC) by claiming that they had invented a promising new drug called "LK-200." Investors were told that, because the drug was not FDA-approved,

PBC had manufactured it overseas using a proprietary production method.

In actuality, "LK-200" was not "proprietary." As a subject of medical research, the substance and the methods for making it had been well-known for years and produced by researchers at the University of Pennsylvania. None of PBC's product was made overseas but instead was produced in a manufacturing facility that Theodore had set up in Woburn, Massachusetts. Over the course of three years, Theodore and Rodgers, in addition to misleading investors about the claimed invention and overseas operation, manufactured LK-200 in sub-standard conditions that exposed the product to contamination. At the same time, Theodore misrepresented himself as a medical doctor.

On April 6, 2000, a federal grand jury returned a fourteen-count indictment against Theodore for conspiracy, mail fraud, and violations of the Food Drug and Cosmetic Act. Theodore was represented by a series of attorneys throughout the proceedings. The first was John Bonistalli, who represented Theodore at his initial appearance on January 24, 2000. On April 11, 2000, John Noonan, now acting as Theodore's counsel, filed a motion for another attorney, Gordon White, to appear pro hac vice as co-counsel. White, a Texas-based attorney, and Noonan filed several motions on Theodore's behalf and on October 23, 2000, both attorneys appeared at an evidentiary hearing on one of the motions,

a motion to dismiss based on an implied promise of immunity. White was the only one to actively participate in that hearing. This was the last time the record reflects the presence of White on behalf of Theodore, despite the fact that Theodore was soon to undergo a fifteen-day trial on the underlying criminal charges. The record indicates that until White disappeared from the scene, Noonan's role was simply that of local counsel.

At a February 1, 2001 pretrial conference, Noonan for the first time appeared as Theodore's sole counsel. The district court set the trial back a week and denied several of Theodore's pretrial motions as untimely. At this hearing, it was apparently made clear that White would no longer be representing Theodore, despite never having formally withdrawn his appearance. In response to the district court's determination that the pretrial motions were untimely, Noonan explained that "Mr. White is supposedly an expert in federal courts and was supposed to handle all these things." Towards the end of the conference, the court inquired into Noonan's comfort with representing Theodore in federal court. Noonan responded that he was concerned that there might be a Sixth Amendment problem, admitting that he was "very uncomfortable." It was Noonan's first trial in federal court in his forty years of practice.

At a subsequent conference on February 2, 2001, Theodore stated that he did not want Noonan to represent him and that from

the start, Noonan had told him that he was not competent to try the case. He moved to replace counsel. The government countered that it had dealt with Noonan since the beginning of the case, that he had always seemed familiar with the case, and that he had had an opportunity to review the local procedural rules. The court denied Theodore's motion and instead appointed Dennis Kelly, a lawyer experienced in handling federal criminal cases, as standby counsel to advise Noonan about federal procedure. Theodore reiterated his objection to having Noonan as his counsel.

On the first day of trial, February 12, 2001, Noonan filed a motion to withdraw as Theodore's counsel and requested a continuance so that another attorney could be appointed. The court, however, denied the motion and ruled that Noonan would continue to represent Theodore.

During Noonan's opening statement at trial, the district court sustained two objections made by the government. Throughout trial, his attempts at cross-examination were riddled with sustained objections for relevance and assuming facts not in evidence. Nine days into trial, the district court received a note from a juror named Babchak inquiring about the possibility of the government offering Theodore a plea bargain. The court brought Babchak into chambers and asked about the note. Babchak responded, "I'm wondering if the defendant is being properly represented." The court then interviewed each juror. Two jurors, Moynihan and

Birch, stated that they could no longer remain open-minded about Theodore's guilt. Birch expressed his belief that Theodore was being inadequately represented. Noonan responded that he agreed with Birch and that his inadequate performance was "really a fundamental problem all the way through here." The court removed these two jurors, but not Babchak.

On the tenth day of trial, Noonan informed the court that he had thirteen witnesses to call. As it turned out, the only witness that he actually attempted to call succeeded in having his subpoena quashed, as Noonan had failed to follow federal procedure. Noonan took no steps to oppose the motion to quash the subpoena, nor did he appear at the hearing. Thereafter, Noonan told the court that he had no witnesses to present to the jury. The government, apparently concerned, requested the court to instruct Theodore that he had a right to call witnesses. Finally, during Noonan's closing argument, the court sustained eight objections made by the government, again due to his commentary on facts not in evidence.

Theodore was convicted of every charge in the indictment. For sentencing and post-trial motions, new counsel was appointed to represent Theodore. Together with his motion for a new trial, Theodore presented an affidavit from Noonan stating that he had a drinking problem that resurfaced during Theodore's trial and that he had not examined thousands of pages of evidence disclosed by the

government. Noonan also indicated that contrary to his pretrial representations to the court, he had never represented a defendant accused of murder. Theodore requested an evidentiary hearing on the new trial motion. The court denied his request as well as the motion. Theodore was ultimately sentenced to 121 months in prison and ordered to pay $1,535,240.00 in restitution to the defrauded investors.

II. DISCUSSION

A. Noonan's Motion to Withdraw

We review for abuse of discretion the district court's denial of defense counsel's motion to withdraw and request for a continuance. See United States v. Woodard, 291 F.3d 95, 106 (1st Cir. 2002). We accord "'extraordinary deference'" to the district court's decision when "allowance of the motion would necessitate a last-minute continuance." Id. at 107. "Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." Id. at 106 (citation omitted).

Though we do not address the merits of Theodore's ineffective assistance claim under Strickland, it is important to set out the constitutional standard for such claims. To successfully claim ineffective assistance of counsel under the Sixth Amendment, a defendant must establish that his counsel's performance fell below an objective standard of reasonableness and

-8-

"that there was a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." Strickland, 466 U.S. at 687-94.

The government argues that Noonan and Theodore never intended to make their claim of inadequate representation until the district court inquired into Noonan's comfort in trying the case, and that the motion was a "patent attempt to parlay the district court's solicitude into some advantage for" Theodore. It contends that Noonan seemed prepared to represent Theodore and that the district court's compromise of appointing Kelly as standby counsel compensated for Noonan's lack of experience in federal court.

Theodore responds that up to the point of his motion to withdraw, Noonan utterly failed to develop and present a defense. Counsel had not filed any substantive pre-trial motions and had several procedural motions denied as untimely. On the other hand, Noonan did say to the district court that he "did all the preliminary work that needs to be done." He met with prosecutors to discuss the trial, came to the U.S. Attorney's Office to review documents, and produced documents and marked exhibits that he apparently intended to use at trial.

As replacing defense counsel so close to the beginning of trial is a measure appropriate for only the most extraordinary circumstances, we cannot hold that the district court abused its discretion when it crafted a compromise solution and denied

Noonan's motion to substitute counsel. The court's accommodation of Noonan's claimed unfamiliarity with federal procedure was reasonable under the circumstances and satisfied Theodore's Sixth Amendment right to effective assistance. See United States v. Nivica, 887 F.2d 1110, 1121 (1st Cir. 1989); see also Woodard, 291 F.3d at 106 (the Sixth Amendment "does not provide an absolute right to counsel of a defendant's choosing"). The fact that Kelly proved to be available for only seven out of the fifteen trial days is another matter, better dealt with in connection with Theodore's motion for a new trial.

Given the deferential standard of review, we hold that the district court did not abuse its discretion when denying Noonan's motion to withdraw and request for a continuance.

B. Mistrial Sua Sponte

We review the district court's decision not to declare a mistrial sua sponte for plain error. See United States v. Smith, 101 F.3d 202, 212 (1st Cir. 1996). A mistrial is declared in a criminal case only when manifest necessity requires it. See Illinois v. Somerville, 410 U.S. 458, 462 (1973).

Theodore claims that when the jurors expressed concerns about Noonan's performance as counsel, manifest necessity required the district court to declare a mistrial, even if Noonan failed to move for one. Theodore further argues that the jurors' concerns were yet another indication that Theodore effectively "had no

-10-

representation throughout all phases of the trial." Though Noonan's performance was concededly less than stellar, it did not amount to "no representation"--Noonan still conducted voir dire, presented opening and closing statements, objected to prosecution evidence, cross-examined witnesses, offered evidence on Theodore's behalf, and requested jury instructions.

Moreover, the court took steps to address the jurors' concerns about Noonan's representation by suspending the trial and questioning each juror individually about the memo. When two of the jurors admitted that they could no longer be impartial, the court excused them and replaced them with alternates. It was not plain error for the court to conclude, despite the jurors' concerns and Noonan's performance thus far, that the trial could go on after it had taken measures to investigate and remedy those concerns. By declaring a mistrial sua sponte under such circumstances, the court would have imposed on Theodore its view of counsel's performance and deprived him of "his option to go to the jury first, and, perhaps, end the dispute then and there with an acquittal." United States v. Jorn, 400 U.S. 470, 484 (1971). Again, given the very high standard of review, we decline to find plain error.

C. Post-Trial Motion for a New Trial and Evidentiary Hearing

We review the district court's denial of an evidentiary hearing for an abuse of discretion. See United States v. Alicea, 205 F.3d 480, 487 (1st Cir. 2000). The party seeking an

-11-

evidentiary hearing on a motion for a new trial must make "a sufficient threshold showing that material facts [are] in doubt or dispute." Id. (citing United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990)).

Theodore sought an evidentiary hearing to address concerns about Noonan's veracity and how previous misrepresentations by Noonan to the court might bear on Theodore's ineffective assistance claim. In particular, he produced an affidavit submitted by Noonan admitting that he had misrepresented his past trial experience to the court. A determination of Noonan's credibility bears on the issue of whether the district court might have handled Theodore's (and Noonan's) repeated claims of ineffective assistance differently, and ultimately whether Theodore satisfied Strickland.

Similarly, revelations of Noonan's alcohol abuse during trial and failure even to glance at volumes of government evidence bear strongly on factual issues of Noonan's overall competency and performance. We already know that Noonan failed to appear at the hearing held on the motion to quash made by the only defense witness subpoenaed for trial, not due to any tactical choice, but because of negligence and his utter ignorance of federal procedure despite the availability of standby counsel. The same goes for the several pre-trial motions denied as untimely by the district court. And though a finding of "no representation" is reserved only for

-12-

the most extreme cases of ineffective assistance, facts adduced at the hearing may lend some support to Theodore's claim that he was constructively abandoned by his counsel throughout trial.  See United States v. Cronic, 466 U.S. 650, 659 (1984).[1]

The government's contention that Theodore failed to satisfy Strickland in his request for an evidentiary hearing misses the thrust of the request.  Indeed, the point of an evidentiary hearing would be to consider evidence upon which a new trial might be ordered pursuant to Strickland.  Where a defendant "[provide]s adequate factual specification beyond bald speculation," an evidentiary hearing is warranted.  United States v. Rodriguez Rodriguez, 929 F.2d 747, 752 (1st Cir. 1991).  Theodore's claims of ineffective assistance before and throughout trial already present close cases--the addition of Noonan's affidavits post-trial make this case all the more unusual and troubling.  As the district court itself expressed concerns regarding Noonan's veracity upon considering Theodore's new trial motion, we hold that the court abused its discretion by not holding an evidentiary hearing to

---

[1]We caution, however, that prejudice may be presumed only in three narrowly circumscribed situations: "First, a trial is presumptively unfair if the accused is completely denied the presence of counsel at a critical stage of the proceedings. Second, such a presumption is warranted if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.  Third, prejudice may be presumed in the presence of circumstances under which a competent lawyer would likely not be able to render effective assistance." Ouber v. Guarino, 293 F.3d 19, 33 (1st Cir. 2002) (internal citations and quotation marks omitted).

resolve or clarify factual issues ultimately crucial to Theodore's claim of ineffective assistance of counsel. We leave to the district court the determination of whether a new trial should be granted, taking into account what happened at trial and whatever evidence is adduced at the hearing.

D. Restitution Order[2]

As Theodore never requested an evidentiary hearing regarding the question of victim restitution, we review the district court's decision for plain error. See Johnson v. United States, 520 U.S. 461, 467 (1997). We review the restitution order itself for an abuse of discretion and subsidiary factual findings for clear error. See United States v. Vaknin, 112 F.3d 579, 586 (1st Cir. 1997).

Theodore argues that without a hearing, the district court had no evidentiary basis on which to make a fair and reasoned restitution order. We disagree and find that the evidence at trial as well as the Pre-Sentence Report (PSR) provided sufficient support for the court's order.

The PSR set forth a schedule of victims and the amount of restitution owed to each. Moreover, Gary Coulter, who had served as counsel to PBC, identified a contemporaneous schedule of investors' contributions, which detailed the identities of the

---

[2]In the event the district court orders a new trial, the restitution order becomes moot.

investors, the amounts they invested in the company, and the dates on which they did so. In his only objection to the PSR, Theodore stated that he never solicited, raised, or received any funds on behalf of PBC or for the production and distribution of LK-200. Evidence at trial, however, showed that though others may have played leading roles in PBC's financial operations, Theodore was integral to the initiation of the fraudulent scheme and was directly responsible for the key falsehoods upon which the scheme rested. We have noted that

> restitution for all criminal conduct done in the course of a single scheme, conspiracy, or pattern of activity is now appropriate, whether or not the defendant has been convicted of (or even charged with) the specific acts, as long as the offense of conviction has an element in the broader scheme, conspiracy, or pattern.

Vaknin, 112 F.3d at 582 n.1. Though Theodore may not have been implicated in each and every step of the fraudulent scheme, what was proved at trial is more than enough for purposes of finding him liable for the amount in the restitution order.

Theodore also claims that without an evidentiary hearing, the district court could not have determined whether Theodore would be able to pay restitution.[3] The record, however, reflects that

---

[3]Under 18 U.S.C. § 3663(a)(1)(B)(i), the court, in determining whether to order restitution, must consider:
    (I) the amount of the loss sustained by each victim as a result of the offense; and
    (II) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

-15-

the court was aware of Theodore's financial status and considered it in fashioning the order.  The court provided for installment payments in the event that immediate payment of the entire amount proved impossible.  It also determined that he did not have to pay interest.  Finally, it chose not to impose a fine.  It is enough that the court "made implicit findings or otherwise adequately evinced [its] consideration" of Theodore's ability to pay.  United States v. Savoie, 985 F.2d 612, 618 (1st Cir. 1993).

We therefore affirm the district court with respect to (1) its denial of Noonan's motion to withdraw and request for a continuance, (2) its decision not to declare a mistrial sua sponte, and (3) its restitution order.  We vacate the district court's order denying Theodore's motion for a new trial based on ineffective assistance of counsel and remand for further proceedings consistent with this opinion.