UNITED STATES of America,

v.

**Thomas Ronald THEODORE,**
**Defendant.**

**No. CR. 00–10023–JLT.**

United States District Court,
D. Massachusetts.

Nov. 22, 2004.

W. Arthur Garrity, III, Garrity, Levin and Muir, Boston, MA, for Sunder K. Ganglani, Interested Party.

Paul G. Levenson, United States Attorney's Office, Boston, MA, for USA, Plaintiff.

Eugene P. McCann, Manzi & McCann, Lawrence, MA, John A. Noonan, Bridgewater, MA, Gordon E. White, Houston, TX, for Thomas Ronald Theodore (1), Defendant, Pro se.

Pretrial Services, U.S. Pretrial Services, Boston, for Pretrial Services, U.S. Pretrial Services, Boston, Notice.

## MEMORANDUM

TAURO, District Judge.

On March 12, 2001, Thomas Ronald Theodore ("Theodore") was convicted of nine counts of mail fraud and three counts of violating the Food, Drug, and Cosmetic Act.[1] He was sentenced to 121 months in prison.[2] Theodore appealed his conviction, alleging several errors by the district court. The Court of Appeals rejected all of Theodore's arguments, except his contention that the district court erred in denying Theodore's motion for an evidentiary hearing on his motion for a new trial. The Court of Appeals remanded the case to this court for an evidentiary hearing to determine whether Theodore is entitled to a new trial because of the ineffective assistance of his counsel at his first trial.

## Background

On April 6, 2000, a federal grand jury indicted Theodore on multiple counts of conspiracy, mail fraud, and violations of the Food, Drug, and Cosmetics Act.[3] Between 1992 and 1995, Theodore and an associate allegedly solicited investments in Private Biologicals Corporations (PBC), falsely claiming that the company had developed, and manufactured overseas, a cutting-edge new drug called "LK–200." In fact, PBC manufactured LK–200, a well-known drug, in allegedly sub-standard conditions at a facility in Woburn, Massachusetts.

Prior to his trial, a series of different attorneys represented Theodore. In January of 2000, John Noonan ("Noonan") appeared for Theodore at his initial appearance.[4] After the initial appearance, John Bonistalli briefly represented Theodore. In April of 2000, Noonan filed a motion for Gordon White ("White") to appear *pro hac vice* on behalf of Theodore, with Noonan to serve as local counsel. On October 23, 2000, Noonan and White represented Theodore at an evidentiary hearing regarding a motion to dismiss. At this hear-

---

1. *United States v. Theodore,* 354 F.3d 1, 3 (1st Cir.2003).

2. *Id.* at 5.

3. *Id.* at 4. Unless otherwise noted, the background facts in this section are drawn from the opinion of the Court of Appeals.

4. Tr. June 28, 2004 ("Tr.1") at 22:9–18.

ing, however, only White actively participated. Although White never formally withdrew, this was his last appearance made on behalf of Theodore.

On February 1, 2001, Noonan represented Theodore at his pretrial conference. Although Noonan had not tried a case in federal court during his forty years of practice, he appeared as Theodore's sole counsel. During this conference, the district court pushed the trial date back one week and denied several of Theodore's pretrial motions as untimely. The district court asked Noonan how comfortable he felt representing Theodore in this matter. Noonan stated that he was "very uncomfortable" and was worried that there might be a Sixth Amendment issue.[5]

At a conference held the next day, Theodore moved to have new counsel appointed. Theodore told the court that he did not want Noonan to represent him, and "that from the start, Noonan had told him that he was not competent to try the case."[6] The district court denied Theodore's motion, but appointed Dennis Kelly as standby counsel "to advise Noonan about federal procedure."[7]

Before jury selection on the first day of trial, February 12, 2001, Noonan filed a motion to withdraw as Theodore's attorney and sought a continuance for new counsel to be found. The district court denied Noonan's motion. Throughout the trial, Noonan's performance was abysmal, and the jury convicted Theodore of all the charges against him.

The district court appointed Theodore new counsel for his sentencing and posttrial motions. Theodore filed a motion for a new trial claiming ineffective assistance of counsel, and he requested that the district court conduct an evidentiary hearing. Theodore's motion included an affidavit from Noonan in which Noonan stated that "he had a drinking problem that resurfaced during Theodore's trial and that he had not examined thousands of pages of evidence disclosed by the government."[8] Contrary to his pretrial representations to the court, Noonan also admitted that he had never tried a murder case in state court. The district court, however, denied Theodore's request for an evidentiary hearing and his motion for a new trial. Theodore was sentenced to 121 months in prison and ordered to pay $1,535,240 in restitution.

Theodore filed a timely appeal, alleging several errors by the district court. The Court of Appeals rejected all of Theodore's arguments, except his contention that the district court erred in denying his motion for an evidentiary hearing on his motion for a new trial.[9] The Court of Appeals remanded the case to this court for an evidentiary hearing to determine whether Theodore is entitled to a new trial based on ineffective assistance of counsel.[10]

### The Evidentiary Hearing

In June of 2004, this court held a two-day evidentiary hearing to determine whether Theodore is entitled to a new trial. At the hearing, Noonan testified at length. Noonan stated that during the discovery phase of Theodore's trial he viewed only a small number of the approximately 16,000 images of financial documents scanned and cataloged onto CD

---

5. *Theodore,* 354 F.3d at 4.

6. *Id.*

7. *Id.*

8. *Id.* at 5.

9. *Id.* at 9.

10. *Id.*

ROMs by prosecutors.[11] Instead, Noonan went to the U.S. Attorney's Office and looked through boxes of documents concerning Theodore's case.[12] This search, however, was limited to identifying financial records for delivery to Attorney White.[13] Noonan did not analyze these records or develop a theory of the case.[14] The analytical work was left to White,[15] and he was certainly out of the picture by February of 2001.

Noonan testified that on February 1, 2001, the date of the pretrial conference, he was not operating out of an office, and he did not have a secretary, paralegal, or any part-time assistants.[16] At the pretrial conference, Noonan informed the district court that he felt "very uncomfortable" trying the case.[17] The next day, Theodore moved to have new counsel appointed.[18] Noonan, though, had told District Judge Lindsay, the presiding trial judge, that he had forty years of trial experience in state court, including trying murder cases.[19] Noonan also represented to Judge Lindsay that he "did all the preliminary work that needs to be done." [20] Noonan statements, however, were grossly inaccurate. At the evidentiary hearing held before this court, Noonan admitted that he never tried a murder case in state court.[21] And there is little doubt that Noonan's preliminary work was far from complete.

Believing Noonan's statements, Judge Lindsay determined that Noonan was competent to try the case, but appointed Attorney Dennis Kelly as standby counsel to assist Noonan with federal criminal procedure.[22] Mr. Kelly, though, had no impact on the quality of Noonan's representation. Mr. Kelly did not assist Noonan outside the courtroom, he did not assist Noonan with direct or cross-examination, and he did not assist Noonan in trying to tear down the government's case against Theodore.[23] Despite Judge Lindsay's best efforts to ensure a fair trial by appointing standby counsel, Noonan failed to utilize the available assistance of Mr. Kelly.[24] Indeed, Noonan testified, as of ten days before trial, he had no defense theme or themes and planned to "[p]lay it by ear and shoot from the hip." [25] Noonan admitted that his strategy, or lack thereof, was detrimental to Theodore.[26]

On the first day of trial, February 12, 2001, Noonan began his opening statement with the following comment: "I am rapidly approaching seventy. I have been retired for five years. I was never supposed to try this case." [27] Though unprepared, Noonan cross-examined the government's

11. Tr. 1 at 37:19–38:10, 40:2–8.

12. *Id.* at 28:1–17.

13. *Id.* at 28:1–29:9.

14. *Id.* at 27:24–29:9, 40:14–20.

15. *Id.* at 29:4–9, 40:14–20.

16. *Id.* at 39:1–12.

17. *Id.* at 46:25–47:23.

18. *Id.* at 50:13–21.

19. *Id.* at 47:6–19, 146:16–147:17.

20. *United States v. Theodore,* 354 F.3d 1, 6 (1st Cir.2003).

21. Tr. 1 at 47:6–19; *See* Def.'s Ex. D ¶ 8.

22. Tr. 1 at 107:25–110:8.

23. *Id.* at 53:2–16.

24. *Id.* at 53:2–54:5.

25. *Id.* at 57:13–58:1.

26. *Id.* at 58:2–3.

27. *Id.* at 74:18–75:6.

witnesses,[28] suggested some defense themes,[29] and introduced a few exhibits.[30] Yet during his cross-examinations, Noonan repeatedly asked open-ended questions,[31] and was often admonished for asking redundant questions[32] and having witnesses read from documents already admitted into evidence.[33] At trial, Noonan frequently floundered and looked, he explained, "for anything I could hang my hat on."[34] In addition, Noonan struggled with the rules of evidence,[35] could not lay a proper foundation for the introduction of evidence,[36] and often could not hear the prosecution's frequent objections.[37] And during Noonan's closing argument, Judge Lindsay sustained eight of the government's objections.[38] At the evidentiary hearing, Judge Lindsay testified that Noonan had "a theory of defense," but he "poorly, poorly executed it."[39] Indeed, during the trial, one juror asked Judge Lindsay whether the U.S. Attorney could offer Theodore a plea bargain because Noonan's representation was so ineffective.[40]

Even more troubling, Noonan did not know how to subpoena witnesses in federal court.[41] Although he wanted to call thirteen witnesses, Noonan was able to properly subpoena only one witness, Sunder Ganglani.[42] Ganglani, however, never testified at trial. On March 1, 2001, Mr. Ganglani filed a motion to quash the subpoena on grounds that he had no relevant personal knowledge of the facts at issue.[43] Ganglani, however, had informed the Food and Drug Administration that Theodore's former company, PBC, was engaged in wrongdoing.[44] Ganglani also helped the FDA obtain incriminating telephone conversations with employees at PBC.[45]

Because Ganglani was scheduled to leave the country, the district court held an impromptu motion hearing on March 2, 2001.[46] Ganglani and his attorney were present for the hearing but Noonan did not attend.[47] Noonan testified that he spoke with the court clerk at 10:00 a.m. and was informed that nothing was scheduled.[48] Noonan, thereafter, went to the library all day and did not receive any

28. *Id.* at 76:22–77:2 (witness Mr. Hayhurst), 78:20–79:18 (witness Dr. Phillips), 86:20–88:18 (witness Ms. MacNeil), 94:17–21 (witness Attorney Coulter).

29. *Id.* at 119:7–120:1, 120:9–14.

30. Tr. June 29, 2004 ("Tr.2") at 76:7–77:9.

31. Tr. 1 at 76:15–77:9 (Mr. Hayhurst), 88:21–22 (Ms. MacNeil), 94:22–24 (Attorney Coulter).

32. *Id.* at 95:10–12.

33. *Id.* at 88:23–89:9.

34. Tr. 2 at 73:3–7.

35. Tr. 1 at 90:18–91:18.

36. *Id.* at 91:19–92:5, 93:17–21.

37. *Id.* at 92:6–11.

38. *United States v. Theodore*, 354 F.3d 1, 5 (1st Cir.2003).

39. Tr. 1 at 119:4–6.

40. *Id.* at 96:18–97:12, 99:11–13. Judge Lindsay promptly addressed the jurors' concerns and dismissed two jurors who could not remain impartial. *Theodore*, 354 F.3d at 6–7.

41. Tr. 1 at 33:21–34:4, 86:20–87:4.

42. *Id.* at 81:6–16; Tr. 2 at 87:10–13.

43. Tr. 1 at 132:16–20, 134:25–135:10.

44. Tr. 2 at 103:15–21.

45. *Id.* at 104:8–24.

46. Tr. 1 at 132:16–133:24.

47. *Id.* at 133:4–8.

48. Tr. 2 at 87:15–17.

messages left for him by the court concerning the motion hearing.[49] At the hearing, Judge Lindsay decided that Ganglani had nothing "relevant to say about this case" and allowed the motion to quash the subpoena "subject to reconsideration."[50] Even though Noonan believed that Ganglani had relevant things to say, he never filed a motion for reconsideration.[51]

In addition to his lack of preparation and inexperience in federal court, Noonan's difficulties were compounded by failing health and alcohol consumption. Noonan testified that he suffers from shortness of breath due to emphysema and partial lung removal.[52] He has also undergone bypass surgery.[53] During the trial, Noonan often received less than two hours of sleep per night.[54] To help him fall asleep, Noonan would consume "three to four hard liquor beverages per night."[55] Noonan, a former alcoholic, now believes that his alcohol consumption dulled his senses and was "another impediment to [his] ability to effectively represent Mr. Theodore in this matter."[56] Before and during the trial, Noonan never informed Judge Lindsay of his medical conditions, history of alcoholism, or present alcohol consumption.[57]

Noonan never filed for compensation because he believed his minimal services were entirely worthless.[58] Even the government concedes that "the overall impression left by his defense was abysmal."[59] Finally, Judge Lindsay testified that Noonan's representation failed to subject the prosecution's case to meaningful adversarial testing.[60]

## Discussion

The Sixth Amendment guarantees that "the accused shall enjoy the right to ... have the Assistance of Counsel for his defence." Under *Strickland v. Washington*, to prevail on an ineffective assistance of counsel claim, "a defendant must establish that his counsel's performance [1] fell below an objective standard of reasonableness and [2] 'that there was a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.'"[61] Under the first part of this analysis, "a reviewing court must not lean too heavily on hindsight: a lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented."[62] This court must consider the totality of circumstances, and "must indulge a strong presumption that counsel's conduct falls

49. *Id.* at 87:15–20.

50. Tr. 1 at 135:4–10; Mot. to Quash [# 141].

51. Tr. 2 at 89:4–7.

52. Tr. 1 at 41:3–16.

53. *Id.* at 41:18.

54. *Id.* at 42:15–16.

55. Def.'s Ex. E ¶ 10.

56. *Id.* ¶¶ 11–12.

57. Tr. 1 at 117:8–11.

58. *Id.* at 58:6–18.

59. United States' Proposed Findings of Fact and Conclusions of Law at 10.

60. When asked, by this court, if Noonan failed to subject the prosecution's case to meaningful adversarial testing, Judge Lindsay testified, "I think it more often fell short of that than it met that standard." Tr. 1 at 153:12–13.

61. *United States v. Theodore*, 354 F.3d 1, 5–6 (1st Cir.2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 687–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

62. *Ouber v. Guarino*, 293 F.3d 19, 25 (1st Cir.2002).

within a wide range of reasonable professional assistance."[63]  In determining whether Noonan's representation satisfied an "objective standard of reasonableness," this court's scrutiny of counsel's performance is "highly deferential."[64]

■ This court believes that Noonan's representation of Theodore clearly fell below an objective standard of reasonableness, easily satisfying the first part of the *Strickland* analysis. By his own admission, Noonan was not competent to represent Theodore.[65]  Noonan did not adequately prepare for trial because he believed that Attorney Gordon White would try the case. Noonan, a retired attorney in failing health, found himself in federal court for the first time, mostly unprepared, and without a focused defense strategy. He failed to call a single witness, he failed to oppose a motion to quash his one properly executed subpoena, and he completely failed to utilize the assistance of standby counsel.

None of Noonan's shortcomings can properly be described as "tactical decisions" to which this court must defer. Noonan's failures were caused by inexperience, lack of preparation, failing health, and possibly, alcohol consumption. Because "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense,"[66] Noonan's

inability to subpoena witnesses raises grave concerns. Noonan's clumsy, redundant, and open-ended questioning rendered the minimal effectiveness of his cross-examinations an illusion of the transcript. From his self-deprecating opening statement to his objection-ridden closing, Noonan fell far below an objective standard of professional competence.

■ Under the "prejudice prong" of the *Strickland* analysis, a defendant must prove that his "attorney's parlous conduct may have altered the outcome of the case."[67]  Such prejudice may be presumed, however, in three narrowly circumscribed situations: (1) if the accused is completely denied the presence of counsel at a critical stage of the proceedings; (2) if counsel entirely fails to subject the prosecutor's case to meaningful adversarial testing; or (3) if circumstances arise in which a competent lawyer would likely not be able to render effective assistance.[68]

This court believes that prejudice may be presumed in this highly extraordinary case because the prosecution's case has "never been subjected to the crucible of meaningful adversarial testing."[69]  In order to presume prejudice, this court understands that "the attorney's failure to test the prosecutor's case must be complete."[70]  The evidentiary hearing revealed that the break-down of the adver-

**63.** *Lema v. United States,* 987 F.2d 48, 51 (1st Cir.1993).

**64.** *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

**65.** Tr. 1 at 46:25–47:5.

**66.** *U.S. v. Scheffer,* 523 U.S. 303, 330 n. 17, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (Stevens, J., dissenting) (citing *Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972); *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948)).

**67.** *Ouber,* 293 F.3d at 25.

**68.** *Id.* at 33.

**69.** *Alabama v. Shelton,* 535 U.S. 654, 667, 122 S.Ct. 1764, 152 L.Ed.2d 888 (2002) (quoting *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)) (internal quotation marks omitted).

**70.** *Bell v. Cone,* 535 U.S. 685, 686, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

sarial process was not limited to "specific points" or discrete aspects of Noonan's representation.[71] Rather, the lack of meaningful adversarial testing began with inadequate preparation and continued throughout every stage of Theodore's trial.

"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."[72] When a criminal trial, however, "loses its character as a confrontation between adversaries" the Sixth Amendment is violated.[73] Finding a break-down of the adversarial process is, of course, "reserved only for the most extreme cases."[74] And while this court recognizes that a "criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills," the Sixth Amendment will not tolerate "a sacrifice of unarmed prisoners to gladiators."[75]

Judge Lindsay testified that Noonan's representation of Theodore, overall, failed to subject the government's case to meaningful adversarial testing.[76] The evidence strongly supports this conclusion. With almost no trial preparation, this retired lawyer, in failing health, with no federal court experience, attempted to act as the government's adversary in a fifteen day trial. Noonan's blunders were severe, persistent, and so distracting that some members of the jury felt that Theodore would do better to enter a plea agreement than to proceed with Noonan as his advocate. Excusing some members of the jury could

not remedy the underlying break-down of the adversarial process. This court, therefore, presumes that Theodore was prejudiced by the ineffectiveness of his counsel.

## Conclusion

For the foregoing reasons, Defendant's motion for a new trial is ALLOWED.

AN ORDER WILL ISSUE.

---

**71.** *Id.*

**72.** *United States v. Cronic,* 466 U.S. 648, 655, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (quoting *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975)) (internal quotation marks omitted).

**73.** *Id.* at 656–57, 104 S.Ct. 2039.

**74.** *United States v. Theodore,* 354 F.3d 1, 7 (1st Cir.2003).

**75.** *Cronic,* 466 U.S. at 657, 104 S.Ct. 2039 (quoting *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 640 (7th Cir.1975)).

**76.** *See* Tr. 1 at 152:11–153:14.