# United States Court of Appeals
## For the First Circuit

Nos. 05-1119, 05-1120

UNITED STATES OF AMERICA,

Appellant/Cross-Appellant,

v.

THOMAS RONALD THEODORE,

Defendant-Appellee/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]
[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Selya, Circuit Judge,

Siler,* Senior Circuit Judge,

and Howard, Circuit Judge.

Paul G. Levenson, Assistant United States Attorney with whom
Michael J. Sullivan, United States Attorney and Adam J. Bookbinder,
were on brief, for United States.
Raymond E. Gillespie for defendant.

November 15, 2006

*Of the Sixth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  This right "is the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).  A defendant seeking to overturn a conviction on ineffective assistance of counsel grounds usually must show that counsel's representation was deficient and that this deficient performance prejudiced the defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  There are, however, situations in which prejudice is presumed, including where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."  United States v. Cronic, 466 U.S. 648, 659 (1984).

In this case, the district court allowed Thomas Ronald Theodore's motion for a new trial, see Fed. R. Crim. P. 33, concluding that defense counsel had performed so poorly that prejudice should be presumed under Cronic.  See United States v. Theodore, 345 F. Supp. 2d 123 (D. Mass. 2004).  The government appeals, arguing that the court erred in presuming prejudice.[1]

In 2000, a grand jury indicted Theodore on nine counts of mail fraud, 19 U.S.C. § 341, and three counts of violating the

---

[1]Theodore filed a notice of cross-appeal (No. 05-1120), which the government moved to dismiss on the ground that Theodore's brief did not include any argument supporting a cross-appeal.  We allow the government's motion.

-2-

Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 331(a), (d), & (p). The indictment alleged that from 1992 until 1995, Theodore and a business partner solicited over $1.5 million in investments by claiming that Theodore had invented a promising new anti-cancer drug called "LK-200." Investors were told that the drug was manufactured by means of a secret process at overseas facilities because it had not been approved for domestic production. In fact, there was nothing secret about "LK-200," which is a well-known biological substance that is produced domestically. Over the life of the scam, Theodore made misstatements to investors about himself and the product, including representations that he was a medical doctor. Theodore also directed the manufacture of "LK-200" in unsanitary conditions that made it unsafe for use.

Following the indictment, Theodore initially was represented by Attorney John Bostinalli, but Bostinalli quickly withdrew from the case. Theodore then was represented by Attorney Gordon White, a Texas attorney who appeared pro hac vice, with Massachusetts Attorney John Noonan serving as local counsel. During the period that White and Noonan represented Theodore, White was lead counsel. However, while White never formally withdrew from the case, he last appeared for Theodore at a motion hearing in October 2000.

On February 1, 2001, Noonan represented Theodore at a pretrial conference. At this hearing, it became apparent that

White no longer represented Theodore and that Noonan was the sole defense counsel. Noonan had been a lawyer for over forty years, but had never tried a federal court case. The district court asked Noonan if he felt comfortable representing Theodore. Noonan responded that he was afraid that his continuing participation could create a Sixth Amendment issue because he was not competent to try the case.

The next day, Noonan formally moved to withdraw and have new counsel appointed. The government responded that Noonan had been involved in the case from the early stages and that he seemed familiar with the issues. The district court denied Noonan's motion and instead appointed standby counsel to advise Noonan about federal procedure. At this point, Theodore objected to having Noonan represent him. The court overruled the objection and ordered that trial commence ten days later, with Noonan serving as sole defense counsel. After a fifteen-day trial, Theodore was convicted on all counts of the indictment.

The district court appointed new counsel to represent Theodore at sentencing and in connection with any post-trial motions he wished to file. Theodore subsequently filed a motion for a new trial, asserting ineffective assistance of counsel. The district court denied Theodore's motion without holding an evidentiary hearing. Applying Strickland, the court ruled that, even if Noonan's performance was deficient, the government's case

was so overwhelming that Theodore could not possibly establish prejudice.

Theodore appealed. See United States v. Theodore, 354 F.3d 1 (1st Cir. 2003). We upheld part of the appeal and remanded, concluding that the district court "abused its discretion by not holding an evidentiary hearing to resolve or clarify factual issues ultimately crucial to Theodore's claim of ineffective assistance of counsel." Id. at 8.

On remand, the district judge who had presided over the trial and denied the new trial motion recused himself. A new district judge held the required evidentiary hearing. Following the conclusion of this hearing, the district court made detailed findings concerning Noonan's performance, which we now summarize. See Theodore, 345 F. Supp. 2d at 126-28.

Noonan's pretrial investigation was incomplete. He reviewed boxes of documents at the United States Attorney's office and identified certain documents that he thought were relevant. But he never opened several CD ROMS that the government had provided which contained all the documents that were available to Noonan at the United States Attorney's office. Moreover, Noonan did not attempt to interview any witness other than Theodore.

At the time of the trial, Noonan did not have an office or support staff, and he in his own words planned "to play it by ear and shoot from the hip." Noonan began his opening statement by

stating that, "I am rapidly approaching seventy. I have been retired for five years. I was never supposed to try this case." The court struck these comments as inappropriate.

During cross examination of the government's witnesses, Noonan repeatedly asked open-ended questions. He was criticized by the court for being redundant and for having witnesses read from documents already admitted into evidence. At times, Noonan appeared unfamiliar with the rules of evidence, struggled to lay proper evidentiary foundations, and had difficulty hearing objections. His closing argument was interrupted by eight objections, all of which were sustained.

Noonan was also unfamiliar with the federal subpoena process and ultimately subpoenaed only one witness. The witness filed a motion to quash claiming that he had no relevant information. The trial judge held an impromptu hearing on March 2, 2001, to deal with the motion, but Noonan was unaware that the hearing had been scheduled and did not attend. At the hearing, the court concluded that the witness "had nothing relevant to say" and allowed the motion to quash "subject to reconsideration." Noonan never sought reconsideration.

On the basis of this factual predicate, the district court concluded that Theodore was entitled to a new trial. The court first ruled that "Noonan's representation of Theodore clearly fell below an objective standard of reasonableness, easily

satisfying the first part of the Strickland analysis." Id. at 129. The court then further concluded that prejudice should be presumed in these circumstances because the government's case had "never been subjected to the crucible of meaningful adversarial testing." Id. (citation omitted). According to the court, "the lack of meaningful adversarial testing began with inadequate preparation and continued throughout every stage of Theodore's trial." Id. at 130.

The government appeals. Acknowledging that "the overall impression left by [Noonan's] defense was abysmal," the government does not contest that Theodore satisfied the performance aspect of his ineffective assistance of counsel claim. The government contends, however, that the district court erroneously concluded that Noonan's performance was so egregious that prejudice should be presumed under Cronic. In the government's view, because Noonan did subject the prosecutor's case to some adversarial testing, Theodore was required to show actual prejudice under Strickland.

We ordinarily review the grant or denial of a new trial motion for a manifest abuse of discretion. See United States v. Conley, 249 F.3d 38, 44 (1st Cir. 2001). Where, however, a party claims that the wrong legal standard was applied in adjudicating the motion, we review the claim de novo. See United States v. Josleyn, 206 F.3d 144, 151 (1st Cir. 2000). Determining whether Strickland's actual prejudice standard or Cronic's presumed

prejudice standard applies to Theodore's new trial motion is a mixed question of law and fact subject to de novo review. See Scarpa v. Dubois, 38 F.3d 1, 9 (1st Cir. 1994); see also Haynes v. Cain, 272 F.3d 757, 761 (5th Cir. 2001).

As mentioned earlier, a successful ineffective assistance of counsel claim generally requires the defendant to demonstrate actual prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. See Strickland, 466 U.S. at 695. There is an exception, however, where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[2] Cronic, 466 U.S. at 659. In such cases, prejudice is presumed. Id. But the Cronic exception is exceedingly narrow, see Florida v. Nixon, 543 U.S. 175, 190 (2004), and applies where the defendant has demonstrated that "the attorney's failure [was] complete," Bell v. Cone, 535 U.S. 685, 696-97 (2002). In other words, "the circumstances leading to counsel's ineffectiveness [must be] so egregious that the defendant was in effect denied any meaningful assistance at all." United States v. Griffin, 324 F.3d 330, 364 (5th Cir. 2003) (citation omitted).

---

[2]Prejudice is also presumed where there is the complete denial of counsel during a critical stage of the prosecution or circumstances surrounding the trial make it impossible for even competent counsel to provide effective representation. See Cronic, 466 U.S. at 659-61.

-8-

The Cronic exception has been applied in cases where counsel slept as evidence was being introduced against the defendant, Burdine v. Johnson, 262 F.3d 336, 338 (5th Cir. 2001) (en banc), where counsel adopted and acted upon a belief that his client should be convicted, Osborn v. Shillinger, 861 F.2d 612, 625 (10th Cir. 1988), and where counsel sat silently throughout the entire trial, see Harding v. Davis, 878 F.2d 1341, 1345 (11th Cir. 1989).  But it has been held inapplicable to cases involving "bad lawyering, regardless of how bad."  Scarpa, 38 F.3d at 13 (citation omitted).  "Attorney error, even when egregious, . . . almost always require[s] analysis under Strickland's prejudice prong."  Id. at 14.

Bell demonstrates the narrowness of the Cronic exception.  See 535 U.S. at 696-97.  During the sentencing phase of a capital murder trial, defense counsel took three actions on behalf of his client: he made a brief opening statement asking for mercy and referencing that the defendant suffered Vietnam Veterans Syndrome; he established on cross-examination that the defendant had received the Bronze Star during his Vietnam service; and he successfully objected to the introduction of two photographs of the murder victims.  Id. at 708.  But counsel did not interview any witnesses relevant to the guilt phase; present mitigation testimony from the defendant's relatives who were available to testify; or make a closing statement.  Id. at 708-10.  Despite counsel's meager

efforts, the Supreme Court determined that the defendant had not demonstrated that counsel failed <u>entirely</u> to oppose the prosecution; rather, the defendant showed only that counsel failed to oppose the prosecution "at specific points" in the proceeding. <u>Id.</u> at 696-97. Therefore, the Court held that <u>Cronic</u>'s presumed prejudice standard did not apply. <u>Id.</u> at 697.

Noonan's performance resembles the attorney's performance in <u>Bell</u>. While Noonan's representation of Theodore suffered significant shortcomings, it was not tantamount to non-representation. Prior to trial, Noonan reviewed boxes of documents, "looked at every single cotton-picking piece of paper," and asked the government to provide copies of those documents he thought relevant. Noonan also filed pretrial motions on Theodore's behalf, including a non-frivolous motion arguing that a recent Supreme Court decision required the dismissal of the mail fraud charges. During voir dire, Noonan exercised several peremptory challenges.

Noonan also participated in the trial itself. He presented an opening during which he touched on several themes, including that Theodore's conduct was beyond the statute of limitations; that someone else was responsible for the illegal conduct; and that "LK-200" was not a drug and therefore not subject to the Food Drug and Cosmetic Act. He cross-examined all of the government witnesses, and he occasionally asked questions that

returned to the themes mentioned in the opening. Noonan also introduced nine defense exhibits that related in some degree to the defense themes, filed a Fed. R. Crim. P. 29 motion for judgment of acquittal, and made a closing argument.

In summarizing Noonan's performance, the district court recognized that Noonan had "cross-examined the government witnesses, suggested some defense themes, and introduced a few exhibits." Theodore, 345 F. Supp. 2d at 126-27. Such minimal performance is sufficient to remove this case from Cronic's ambit. See, e.g., Bell, 535 U.S. at 696-97; Barrow v. Uchtman, 398 F.3d 597, 603 n.4 (7th Cir. 2005) (concluding that Cronic did not apply where counsel presented no evidence in defendant's capital case but did present an opening or closing argument and conducted some cross-examinations); Millender v. Adams, 376 F.3d 520, 524 (6th Cir. 2004) (concluding that Cronic did not apply where counsel cross-examined witnesses, made objections, and presented a closing argument); Hooper v. Mullin, 314 F.3d 1162, 1175 (10th Cir. 2002) (concluding that Cronic did not apply where counsel cross-examined witnesses, made objections, presented some evidence favoring defendant, and made an opening and closing argument); Fink v. Lockhart, 823 F.2d 204, 206 (8th Cir. 1987) (concluding that Cronic did not apply where defense counsel used peremptory challenges, cross-examined witnesses, and made a closing argument). This is not to say that Noonan's performance was acceptable. Indeed, it

-11-

undoubtedly fell below the "very forgiving" Sixth Amendment standard for effective assistance of counsel. <u>Delgado</u> v. <u>Lewis</u>, 223 F.3d 976, 981 (9th Cir. 2000). But Noonan's conduct was not so deficient that Theodore should have been relieved from demonstrating actual prejudice under <u>Strickland</u>.

Theodore has presented an alternative argument for affirming the new trial order. He contends that even if prejudice was incorrectly presumed under <u>Cronic</u>, he has demonstrated actual prejudice under <u>Strickland</u>. The government disagrees and further contends that Theodore forfeited the actual prejudice argument by failing to raise it in the district court.

In the circumstances of this case, we do not find that Theodore has forfeited his actual prejudice claim. During Theodore's opening remarks at the post-trial evidentiary hearing, counsel stated that Theodore would present evidence showing that if Noonan had done a better job "it would have made a difference." Counsel also specifically distinguished Theodore's <u>Strickland</u> argument from his <u>Cronic</u> argument by telling the court that, at the conclusion of the hearing, Theodore "will have met the <u>Strickland</u> test [and] will also have met the test to show that Noonan . . . constructively abandoned [him]." And, in Theodore's proposed findings of fact and conclusions of law, he specifically requested a ruling on actual prejudice.

It is true that Theodore did not fully develop the actual prejudice issue before the district court. But this resulted from the manner in which events unfolded and not from any decision to abandon the actual prejudice argument. On the first day of the evidentiary hearing, Noonan and the trial judge testified concerning Noonan's performance. At the start of the second day of the hearing, the district court announced that, based on the first day's testimony, it had decided to order a new trial under <u>Cronic</u>. The court offered the government the opportunity to withdraw its opposition to Theodore's motion, but the government declined, so the court permitted the hearing to continue to a conclusion. Given the court's statement that it had already decided to allow the new trial motion on presumed prejudice grounds, we will not fault Theodore for declining to make a detailed presentation on actual prejudice.

The lack of a complete evidentiary record does, however, prevent us from accepting Theodore's invitation to resolve the actual prejudice issue on this appeal. The issue largely turns on documents that are not properly within the appellate record. Moreover, the record, as currently constituted, lacks an adequate description of the precise evidence that Theodore would present if a retrial were ordered. We therefore **vacate** the new trial order and **remand** to the district court to consider, upon further submissions or after hearing, whether Theodore has demonstrated

actual prejudice under <u>Strickland</u>. <u>See</u> <u>Dugas</u> v. <u>Coplan</u>, 428 F.3d 317, 342-43 (1st Cir. 2005) (remanding for further record development on whether the defendant could establish actual prejudice under <u>Strickland</u>).

**<u>So ordered</u>**.