**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 09-1223

UNITED STATES OF AMERICA,

Appellee,

v.

STEPHEN ADRIAN RAMNATH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lipez, Circuit Judge,

Souter, Associate Justice,* and Selya, Circuit Judge.

J. Gregory Batten for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D.
Silsby, United States Attorney, was on brief, for appellee.

March 1, 2010

---

*  The Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER**, **Associate Justice**. The defendant, Stephen Ramnath, was convicted of conspiracy to distribute, and possess with intent to distribute, more than fifty grams of crack in violation of 21 U.S.C. §§ 846 and 841(a)(1). He argues that admission of pre-conspiracy and bad act evidence was error, that the evidence was insufficient to prove conspiracy, that admission of alleged co-conspirator hearsay was reversible and that the Maine venue for trial was unsupported. We hold the pre-conspiracy and bad act evidence admissible and the conspiracy clearly shown. The remaining claims assume that the conspiracy was unproven and fall in consequence of our contrary conclusion.

On July 25, 2007, law enforcement agents in Portland, Maine, made a controlled purchase of crack cocaine from Hussein Al-Rikabi, and then got authorization to tap his phone. Over the course of the next week, Ramnath (speaking from New Jersey) was a party in conversations that anyone would recognize as guarded discussions about price and quantity of drugs to be obtained by Ramnath for sale to Al-Rikabi. Ultimately, they arranged that Al-Rikabi would drive from Maine to see Ramnath in New Jersey. The police observed this meeting through binoculars and saw a large quantity of cash pass from Al-Rikabi to Ramnath in exchange for something they could not make out. The next day, officers in Portland saw Al-Rikabi engage in a series of short encounters in commercial establishments and on the streets, including a

-2-

neighborhood noted for drug sales. Less than two weeks later, the wiretap picked up another conversation in which Al-Rikabi apparently sought to buy more drugs from Ramnath, who spoke to the ability of his sources to produce material good to "cook."

Two months after that phone interception, Al-Rikabi was arrested in Maine on drug charges, and a day later so was Ramnath, in New Jersey. Ramnath admitted that he already knew of Al-Rikabi's arrest, and that twice he had sold him 100 grams of crack knowing it was for resale in Maine at a price higher than the rate in the New Jersey market. Ramnath consented to a search of his apartment, which produced 16 grams of powder cocaine, some cutting agent, a digital pharmacist's scale and the sort of plastic baggies used for individual drug sales.

As for Ramnath's assignment of error in admitting evidence of the controlled purchase on July 25, trial counsel objected that it was irrelevant because the conspiracy was charged as having begun on July 26. Current counsel adds that its unfair prejudicial effect substantially outweighed its probative value, see Fed. R. Evid. 403, and that trial counsel was ineffective in failing to request an instruction limiting its consideration to any possible bearing on Ramnath's understanding or intentions in dealing with Al-Rikabi. The relevance objection was rightly overruled; the evidence served to identify Ramnath's alleged co-conspirator, Al-Rikabi, as a drug dealer, with the implication that

someone supplying him with large quantities of drugs would know what he would do with them. Since evidence subsequently obtained showed that Ramnath and Al-Rikabi engaged in substantial drug transactions (as, indeed, Ramnath admitted, only denying that the parties were conspirators), the relevance of this evidence was clear, and its probative value not substantially outweighed. The further claim of counsel's constitutional inadequacy adds nothing to this appeal; the prevailing rule in this circuit generally bars consideration of an ineffectiveness claim raised for the first time on appeal, United States v. Theodore, 354 F.3d 1, 3 (1st Cir. 2003), and in any event Ramnath's counsel mentions it with a brevity that fails to address adequately the elements of a charge of ineffective assistance under Strickland v. Washington, 466 U.S. 668, 687 (1984).

Ramnath's unsuccessful objection to admission of the drugs and paraphernalia found in his apartment was followed by an instruction that the jury could consider them "only for the limited purpose of deciding whether Mr. Ramnath had the state of mind or intent necessary to commit the crime charged," and its admission was consistent with the provision of Federal Rule of Evidence 404(b) that evidence of other crimes, while inadmissible to prove propensity to commit the crime charged, nonetheless may be received to show motive, intent or plan, among other things. Being admissible here, it was an evidentiary bookend to the testimony

about Al-Rikabi's drug sale just before the authorities got wind of his connection with Ramnath. The quantity of drugs, the baggies, the cutting agent and the scale (described by a police witness as a distributor's "number one tool") combined to confirm that Ramnath was, as he admitted, a sophisticated drug dealer, and provided probative evidence of his intent when he undertook to supply another known dealer with commercial quantities of crack cocaine.

Ramnath's admissions were thus given corroborative context for consideration on the conspiracy charge, that is, that Ramnath had voluntarily agreed with Al-Rikabi to distribute the specified quantity of crack (and to possess it for that purpose) with the understanding that Al-Rikabi would distribute it to others. See United States v. Thompson, 449 F.3d 267, 275 (1st Cir. 2006). This could not have been a difficult issue for the jury. The evidence just discussed indicates that Ramnath was a distributor and Al-Rikabi was dealing in retail quantities in street sales. The telephone conversations show that Ramnath also sold in volume and undertook to get a large quantity of crack for Al-Rikabi. (This much is inferrable from Ramnath's own intercepted statements, as to which he has no sustainable hearsay objection.) The account of the New Jersey surveillance established that the initial dialogue led to a transaction involving a considerable sum of money, and Ramnath's subsequent statements over the phone reflect an understanding that his relationship with Al-Rikabi would

-5-

continue.  These facts are confirmed by his confession, which mentioned two sales of commercial quantities to Al-Rikabi as well as the Maine destination of the crack for profitable resale there. While Ramnath argues that his confession ought to be ignored as uncorroborated, if corroboration were needed the record supplies it: evidence of Al-Rikabi's occupation, observations during the New Jersey surveillance, Ramnath's intercepted statements, and the dealer's accoutrements in his apartment.  The pieces fit comfortably together and the jury was entitled to find agreement to a joint course of conduct resulting in Al-Rikabi's retail sales in Maine.

Given the sufficient support for the conspiracy charged, the remaining issues here go by the boards.  The objection to admitting Al-Rikabi's intercepted statements simply repeats the claim that no conspiracy was proven.  But because it was shown (by evidence including "some extrinsic proof," United States v. Sepulveda, 15 F.3d 1161, 1182 (1st Cir. 1993)), the co-conspirator statements fall outside the definition of hearsay, see Fed. R. Evid. 801(d)(2)(E), there being no serious question that the discussions of larger sales were made during and in furtherance of the conspiracy.  What Al-Rikabi's statements added to the probative force of Ramnath's own is debatable, but admissibility is not.

Neither is proper venue.  Ramnath told the police the drugs Al-Rikabi obtained from him were for resale in Maine, at

-6-

prices higher than those in New Jersey, and evidence in the record is enough to show that Maine was where the chain of commerce ended. To be sure, Ramnath argues that his statement is incompetent to support the venue because he was a mere seller, not part of a conspiracy whose business extended to Maine.  But our conclusion that conspiracy was sufficiently shown settles that; the venue was properly laid in a district where the object of the conspiracy offence was realized, see 18 U.S.C. § 3237(a); United States v. Santiago, 83 F.3d 20, 25 (1st Cir. 1996).

**Affirmed**.