Alfred FUSI, Plaintiff,

v.

Steve O'BRIEN, in His Capacity as Superintendent of the Massachusetts Department of Correction, Defendant.

Civil Action No. 07–10940–NMG.

United States District Court,
D. Massachusetts.

Dec. 5, 2008.

Bernard Grossberg, Bernard Grossberg, Esq., Chauncey B. Wood, Wood & Nathanson, LLP, Boston, MA, for Plaintiff.

Jonathan M. Ofilos, Office of the Attorney General, Trial Division, Boston, MA, for Defendant.

### MEMORANDUM & ORDER

GORTON, District Judge.

In February, 1984, a jury in Essex County Superior Court convicted the petitioner, Alfred Fusi ("Fusi"), of rape in violation of M.G.L. ch. 265, § 22B. While on trial, Fusi was represented by Attorney Richard Chambers ("Atty. Chambers"). Fusi has since filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 claiming ineffective assistance of counsel based on Atty. Chambers' performance at trial. Fusi has also filed a related motion for an evidentiary hearing.

### I. *Background*

#### A. Factual Background

Fusi's prosecution arose out of an incident that occurred on the evening of September 11, 1981. The alleged rape victim in the case described how she had gone out to two bars and consumed five drinks during the evening. At about 2:00 a.m., the victim had an argument with her boyfriend and decided to take a walk. While walking, she passed a man (18 to 20 years old) who said "Hi" as she passed him. When she said "Hi" in response, he hit her in the jaw, knocking her temporarily unconscious. She regained consciousness in a backyard where her assailant was kneeling on top of her, illuminated from some light source. She screamed but the man told her he would kill her if she did not stop screaming and stuffed a bandana into her mouth. He proceeded to rape her and then immediately left the area.

The victim walked out to a road where after a short time, she saw a friend driving by. The friend stopped and took her to the police station. Although the victim

reported the assault, she did not make a written statement about the rape at that time because she felt "out of it" and wanted to go to the hospital to obtain treatment for her jaw.

The following day, the victim leafed through a local high school yearbook to try to give her friends an idea of what her assailant looked like. She did not notice that Fusi's photograph appeared in the yearbook four times. Six days later, the victim returned to the police station where the police arrayed seven photographs of men matching her description of the assailant. In less than one minute, she picked out Fusi as "the man that raped me". She also positively identified him after looking at the photographs a second time. At that time the victim provided the police with a six-page written statement describing the rape. Approximately one month later, the victim returned to the police station again and picked Fusi out from a nine-man line-up in less than one minute. The victim also positively identified Fusi as her rapist at his trial.

The strategy Atty. Chambers chose to adopt at Fusi's trial was one of mis-identification and alibi. To that end, he cross-examined the Commonwealth's witnesses, including the victim at length, focusing on the victim's lack of opportunity to see her assailant and on discrepancies in her description of him as compared with his actual appearance, such as 1) her failure to describe a birth-mark Fusi bears on his cheek, 2) her description of him as olive-skinned and Italian-looking (whereas he was very pale-skinned) and 3) her statement that the assailant weighed considerably less than Fusi actually weighed.

Atty. Chambers called several witnesses to testify about Fusi's appearance. He also called Fusi's girlfriend of six years and a friend of Fusi's to testify that on the evening in question they were "hanging out" at Fusi's home. Fusi's girlfriend tes-

tified that Fusi drove her home about 1:30 a.m. Fusi's mother testified that she was still awake when Fusi returned home about half an hour later. She also testified that she went to bed around 2:20 a.m. and did not hear anyone leave the house for the rest of the night. At the conclusion of the trial, the judge, addressing Atty. Chambers, stated, "I appreciate you worked hard". Atty. Chambers did not, however, become aware of or cross-examine the victim with respect to her six-page, written statement describing the rape even though that statement was available for use at trial and was inconsistent with the victim's testimony in several ways.

## B. Procedural History

The Massachusetts Court of Appeals affirmed the judgment of the trial court and the Supreme Judicial Court ("the SJC") denied any further appellate review.

Over the course of almost 20 years following his conviction, Fusi filed five motions for a new trial, all of which were denied. Fusi alleged, *inter alia,* ineffective assistance of counsel based upon Atty. Chambers' alleged failure to prepare adequately for trial or to interview potential witnesses in support of his second and fifth motions. Fusi also alleged ineffective assistance of counsel for Chambers' failure 1) to move to dismiss the indictment in support of Fusi's third motion, 2) to request a jury instruction on "good faith error" with respect to the victim's identifications and 3) to represent Fusi adequately during sentencing, in support of his fourth motion.

Evidentiary hearings were held in connection with the second and fourth motions. Fusi requested an evidentiary hearing on the fifth motion but Justice Robert H. Bohn of the Massachusetts Superior Court denied that request because he found Fusi's

eight affidavits, hundreds of pages of trial and motion transcripts, and various

materials dealing with discipline of his trial counsel for unrelated matters to be sufficient for determination of the issues. *Commonwealth v. Fusi*, No.1981–03626, slip op. at 10 (Mass.Super.Ct. Dec. 4, 2003).

In support of his petition for federal habeas corpus relief, Fusi alleges ineffective assistance of counsel based on the fact that, at the hearing for the second motion for a new trial, Atty. Chambers stated that during the trial he tried to contact witnesses who had exculpatory evidence but, 17 years later, admitted, in an affidavit, that, in fact, he had conducted no investigation of the case except for visiting the crime scene.[1] Fusi presented that argument to the trial court in his fifth motion for a new trial. The denial of that motion was affirmed by the Massachusetts Appeals Court and the SJC, again, denied further appellate review. *See Commonwealth v. Fusi*, 447 Mass. 1113, 857 N.E.2d 1094 (2006); *Commonwealth v. Fusi*, 67 Mass.App.Ct. 1109, 854 N.E.2d 1266 (Mass.App.Ct.2006).

In support of his motion for an evidentiary hearing in connection with his petition, Fusi argues that Atty. Chambers did not attempt to contact Leonard and Catherine Bartolo ("the Bartolos"), behind whose residence the victim was allegedly raped. Fusi asserts that the Bartolos would have been available to testify at his trial, if summonsed, and would have offered testimony in conflict with that of the victim with respect to the source of light in their backyard and whether she screamed on the night of the alleged rape.

As further evidence of Atty. Chambers' alleged ineffective representation, Fusi points to Atty. Chambers' failure to obtain and/or refer to the six-page statement the victim gave to the police. That statement contains details that are inconsistent with the victim's testimony at trial, specifically concerning: 1) the length of time a) she had been walking before she encountered her assailant, b) she lay on the ground after her assailant left and before she walked out to the street and c) between the rape and when she went to the police, 2) whether the victim was able to describe the color of her assailant's eyes and 3) whether the assailant slapped the victim in the backyard.

In addition, Fusi notes that Atty. Chambers had little time to prepare for trial because he was assigned to the case only two days before jury empanelment by the lawyer Fusi had originally retained. Moreover, Atty. Chambers did not discuss the strategy of his defense with Fusi until the first day of trial and made no investigation of the case except for visiting the scene of the crime, interviewing Fusi's mother and sister and reviewing the police reports and grand jury minutes.

## II. *Legal Analysis*

### A. Legal Standard

 Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AED-

---

1. Fusi contends that, at the time of the second motion for a new trial in 1985, Atty. Chambers was under investigation by the Board of Bar Overseers for misconduct and only after he was formally disbarred was he willing to disclose the true nature of his mishandling of Fusi's case. At the hearing on the pending motions, Fusi also suggested that Atty. Chambers would be "more truthful" about his misconduct at the proposed evidentiary hearing but, to the extent such evidence

"fundamentally alter[s]" Fusi's claim of ineffective assistance of counsel, it has not been "fairly presented" to the state courts. *Vasquez v. Hillery*, 474 U.S. 254, 260, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Jones v. Maloney*, 644 F.Supp. 146, 148 (D.Mass.1986). Under the exhaustion requirement pertaining to habeas corpus petitions, 28 U.S.C. § 2254(b), this Court is, therefore, unable to consider it.

PA"), Pub.L. No. 104–132, 110 Stat. 1214, district courts have some discretion in granting evidentiary hearings to habeas petitioners. *See* Rule 8 of the Rules Governing § 2254 Cases in United States District Courts; *Teti v. Bender,* 507 F.3d 50, 61 (1st Cir.2007). However, if a petitioner "has failed to develop the factual basis of a claim in State court proceedings", AEDPA expressly prohibits evidentiary hearings unless the petitioner shows that:

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). A failure to develop the factual basis of a claim exists where the petitioner or his counsel was not "diligent in his efforts", meaning he or she did not make "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court". *Williams v. Taylor,* 529 U.S. 420, 435, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

■ If a petitioner successfully develops the factual basis of a claim, and thus is not subject to § 2254(e)(2), the Court must then consider

whether [an evidentiary] hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.

*Teti,* 507 F.3d at 62, quoting *Schriro v. Landrigan,* 550 U.S. 465, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007). Factual allegations entitle a petitioner to habeas relief if they are "sufficient to overcome AEDPA deference to state court's factfindings and legal conclusion to the contrary". *Teti,* 507 F.3d at 62. The petitioner is not required to "point to specific facts he *will* establish that will entitle him to relief". *Teti,* 507 F.3d at 62. If the petitioner meets that standard, the district court may (but is not required to) grant an evidentiary hearing. *Pike v. Guarino,* 492 F.3d 61, 70 (1st Cir.2007).

The subject deference afforded by AEDPA results from the statute's requirement that federal habeas relief be granted only where a state court adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", 28 U.S.C. § 2254(d)(1), or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2). It is presumed that Fusi relies here on the former rather than the latter statutory provision.

■ The issue in this habeas petition is whether Fusi was deprived of the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. The landmark federal case is *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which provides that, in order to succeed on a claim of ineffective assistance of counsel, a petitioner must show that: 1) counsel's performance was deficient and 2) the deficient performance prejudiced the defense. The element of deficiency requires that

counsel made errors so serious that counsel was not functioning as the

"counsel" guaranteed ... by the Sixth Amendment ... [i.e.] that counsel's representation fell below an objective standard of reasonableness.

*Id.* at 687–88, 104 S.Ct. 2052. The element of prejudice requires that "counsel's errors were so serious as to deprive [petitioner] of a fair trial", or, in other words, that there is a reasonable probability that but for counsel's unprofessional conduct the outcome would have been different. *Id.* at 687, 104 S.Ct. 2052. A reasonable probability is one "sufficient to undermine confidence in the outcome" but not just "some conceivable effect on the outcome of the proceeding". *Id.* at 693–94, 104 S.Ct. 2052.

In cases where trial counsel's deficiency results in a failure on cross-examination of the government's witnesses, prejudice is determined by reference to three factors: 1) "the strength of the prosecution's case", 2) "the effectiveness of the defense that was presented at trial" and 3) "the potential value of the new evidence and new avenues for cross-examination in undermining the credibility of the government witnesses' testimony". *Dugas v. Coplan,* 506 F.3d 1, 9 (1st Cir.2007) (internal quotation marks and citation omitted).

### B. Application

The Court concludes that Fusi has successfully developed the factual basis of his claim of ineffective assistance of counsel because he 1) presented evidence in support of his claim at a hearing on his second motion for a new trial, 2) submitted similar evidence along with his fifth motion for a new trial and 3) requested an evidentiary hearing in connection with that motion for a new trial (although that request was denied). *See Williams,* 529 U.S. at 437, 120 S.Ct. 1479 ("Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court...."); *Pike,* 492 F.3d at 69

(petitioner successfully developed a factual basis by presenting affidavits at a state court evidentiary hearing).

Therefore, Fusi is not required to meet the heightened standard set forth in 28 U.S.C. § 2254(e)(2). Instead, he must simply demonstrate that he has alleged facts sufficient to overcome AEDPA's deference to the state court's denial of his claim of ineffective assistance of counsel. Notwithstanding the fact that Fusi is confronted by the less onerous standard, the Court concludes that he has failed to satisfy it.

Fusi alleges that, if afforded an evidentiary hearing, he would present the following witnesses:

1) Atty. Chambers, who will testify that he did not conduct an investigation, attempt to confer with the government's witnesses, impeach the victim using a statement she made to the police or confer with the petitioner until the day of trial;

2) the petitioner's mother and sister, who will testify that Atty. Chambers contacted them two days prior to trial asking a number of questions about the case that they could not answer;

3) Leonard Bartolo, who will testify that he was never contacted by Atty. Chambers but had information directly contradicting the trial testimony of the victim and police witnesses, as described above; and

4) the petitioner, who will testify concerning Atty. Chambers' lack of preparation prior to trial.

Such evidence, even if true, would not, however, be sufficient to show that the state court's denial of a new trial for Fusi was contrary to, or involved an unreasonable application of, the Supreme Court precedent of *Strickland. See* 28 U.S.C. § 2254(d)(1). The evidence may well be

sufficient to satisfy the first prong of *Strickland* by demonstrating that Fusi's counsel was deficient. *See Dugas v. Coplan,* 428 F.3d 317, 328–32 (1st Cir.2005) (finding trial counsel deficient for failing to investigate fully evidence that could have presented a valid defense); *Horton v. Allen,* 370 F.3d 75, 87 (1st Cir.2004) (noting that "[i]n some instances, the failure of defense counsel to interview witnesses can establish the deficient performance prong of the *Strickland* analysis"); *United States v. Santiago,* 474 F.Supp.2d 209, 213–14 (D.Mass.2007) (failure to interview crucial witnesses satisfied *Strickland*'s deficiency prong).

The state court was not, however, unreasonable in finding that the evidence fails to satisfy the second prong of *Strickland,* which requires Fusi to show he was prejudiced by Atty. Chambers' representation. Indeed, Fusi has failed to carry his burden of proving that Atty. Chambers' deficient lawyering was so serious as to undermine confidence in the rape conviction. *See Stephens v. Hall,* 294 F.3d 210, 225 (1st Cir. 2002) (finding no prejudice in a case that rested primarily on the victim's credibility where trial counsel failed to cross-examine the victim about her criminal history but impeached her credibility by other means); *cf. Matthews v. Rakiey,* 54 F.3d 908, 927, 930 (1st Cir.1995) (finding prejudice existed in a rape case based primarily on the victim's identification of the defendant where counsel failed to produce any alibi or character witnesses and conducted only limited, ineffective cross-examination).

It is most significant to point out here that the Commonwealth presented a solid case against Fusi. It proved that the victim reported the rape promptly and that the victim's description of her assailant was entirely accurate in several respects, including hair style and color, build, age and attire. The victim specifically and un-

equivocally identified Fusi on multiple occasions.

Moreover, Atty. Chambers was able to impeach the victim at trial. He pointed out inconsistencies in her description of Fusi as her assailant when compared with his actual appearance. He also presented alibi witnesses to suggest that the victim's identification of Fusi was implausible. Moreover, the jurors were aware that the victim's ability to identify Fusi as her assailant was impaired because she had been drinking beforehand and had been dealt a blow that had knocked her temporarily unconscious. They also were made aware that the victim originally failed to pick Fusi out of a yearbook containing his photographs.

Although Atty. Chambers' impeachment of the victim probably would have been more effective had he utilized other evidence such as the Bartolos' testimony or the victim's six-page statement, it is unlikely that such evidence would have affected the outcome of the case. Minor discrepancies between a statement given shortly after the rape and the testimony at trial over two years later is not likely to have created a reasonable doubt in the jurors' minds. Similarly, it is implausible that reasonable doubt would have arisen from testimony that a scream outdoors in the middle of the night went unnoticed by an older couple asleep inside a nearby house or from conflicting testimony concerning the lighting of the Bartolo's backyard.

Moreover, even if the question of prejudice in Fusi's case could be considered a "close call" under the standard set forth in *Strickland,* AEDPA prohibits this Court from reaching an independent decision on that issue. *See Stephens,* 294 F.3d at 225. Rather, this Court is to decide only whether the state court's application of the standard was *unreasonable.* Within those constraints, this Court finds that Fusi's

factual allegations, even if true, do not overcome the deference afforded by AED-PA to the state courts' determination that he failed to establish prejudicial ineffective assistance of counsel. Thus, the Court concludes that an evidentiary hearing is unwarranted.

In the process of considering Fusi's motion for an evidentiary hearing, the Court has necessarily considered the merits of his petition for federal habeas corpus relief. In so doing, the Court has determined that Fusi is not entitled to such relief and, therefore, his petition will be dismissed.

### ORDER

In accordance with the foregoing, Fusi's motion for an evidentiary hearing (Docket No. 24) is **DENIED** and his petition for habeas corpus (Docket No. 1) is **DISMISSED.**

**So ordered.**