# United States Court of Appeals
## For the First Circuit

No. 09-1060

ALFRED P. FUSI,

Petitioner, Appellant,

v.

STEVEN O'BRIEN,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel J. Gorton, U.S. District Judge]

Before

Boudin, Selya, and Gajarsa,[*]
Circuit Judges.

Bernard Grossberg for appellant.
Jessica V. Barnett, Assistant Attorney General, Criminal
Bureau, Appeals Division, with whom Martha Coakley, Attorney
General, was on brief, for appellee.

September 16, 2010

---

[*] Of the Federal Circuit, sitting by designation.

**GAJARSA**, **Circuit Judge**.  Petitioner Alfred Fusi ("Fusi") appeals from the United States District Court for the District of Massachusetts' denial of his petition for a writ of habeas corpus and request for an evidentiary hearing.  See Fusi v. O'Brien, 588 F. Supp. 2d 158 (D. Mass. 2008).  In his habeas petition, Fusi alleged that he was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel failed to prepare for trial.  Because Fusi failed to exhaust his ineffective assistance of counsel claim in state court, the district court should have dismissed his petition without prejudice.

**I.**

On February 17, 1984, Fusi was convicted in Essex County Superior Court of rape in violation of chapter 265, section 22B of Massachusetts General Laws.  Fusi was sentenced to a prison term of fifteen to twenty years.  Fusi's sentence was to begin after he finished serving time for a previous conviction.

The district court cogently and aptly described the circumstances surrounding Fusi's conviction and the performance of his initial trial counsel, Richard Chambers, as follows:

> Fusi's prosecution arose out of an incident that occurred on the evening of September 11, 1981.  The alleged rape victim in the case described how she had gone out to two bars and consumed five drinks during the evening.  At about 2:00 a.m., the victim had an argument with her boyfriend and decided to take a walk.  While walking, she passed a man (18 to 20 years old) who said "Hi" as she passed him.  When she said "Hi" in response, he hit her in the jaw, knocking her temporarily unconscious.  She

regained consciousness in a backyard where her assailant was kneeling on top of her, illuminated from some light source. She screamed but the man told her he would kill her if she did not stop screaming and stuffed a bandana into her mouth. He proceeded to rape her and then immediately left the area.

The victim walked out to a road where after a short time, she saw a friend driving by. The friend stopped and took her to the police station. Although the victim reported the assault, she did not make a written statement about the rape at that time because she felt "out of it" and wanted to go to the hospital to obtain treatment for her jaw.

The following day, the victim leafed through a local high school yearbook to try to give her friends an idea of what her assailant looked like. She did not notice that Fusi's photograph appeared in the yearbook four times. Six days later, the victim returned to the police station where the police arrayed seven photographs of men matching her description of the assailant. In less than one minute, she picked out Fusi as "the man that raped me". [sic] She also positively identified him after looking at the photographs a second time. At that time the victim provided the police with a six-page written statement describing the rape. Approximately one month later, the victim returned to the police station again and picked Fusi out from a nine-man line-up in less than one minute. The victim also positively identified Fusi as her rapist at his trial.

The strategy Atty. Chambers chose to adopt at Fusi's trial was one of mis-identification and alibi. To that end, he cross-examined the Commonwealth's witnesses, including the victim at length, focusing on the victim's lack of opportunity to see her assailant and on discrepancies in her description of him as compared with his actual appearance, such as 1) her failure to describe a birth-mark Fusi bears on his cheek, 2) her description of him as olive-skinned and Italian-looking (whereas he was very pale-skinned) and 3) her statement that the assailant weighed considerably less than Fusi actually weighed.

Atty. Chambers called several witnesses to testify about Fusi's appearance. He also called Fusi's girlfriend of six years and a friend of Fusi's to testify that on the evening in question they were "hanging out" at Fusi's

home.  Fusi's girlfriend testified that Fusi drove her home about 1:30 a.m. Fusi's mother testified that she was still awake when Fusi returned home about half an hour later.  She also testified that she went to bed around 2:20 a.m. and did not hear anyone leave the house for the rest of the night.  At the conclusion of the trial, the judge, addressing Atty. Chambers, stated, "I appreciate you worked hard". [sic]  Atty. Chambers did not, however, become aware of or cross-examine the victim with respect to her six-page, written statement describing the rape even though that statement was available for use at trial and was inconsistent with the victim's testimony in several ways.

Fusi, 588 F. Supp. 2d at 160-61.

At the conclusion of the initial trial, an Essex County jury found Fusi guilty of rape and his conviction was subsequently affirmed by the state appellate courts.  Fusi then filed his first motion for post-conviction relief on April 18, 1984.  Fusi's motion alleged that the jury improperly considered his failure to testify at trial as evidence of guilt.  Atty. Chambers represented Fusi during this first motion.  The motion was denied after a non-evidentiary hearing.

Fusi, with the assistance of new counsel, then filed a second motion for post-conviction relief on December 12, 1985.  Fusi's new counsel argued that Fusi was entitled to a new trial on several grounds, including ineffective assistance of counsel.  Specifically, Fusi alleged that Atty. Chambers provided ineffective assistance of counsel by, inter alia, failing to interview and call prospective witnesses.  An evidentiary hearing was held and the motion was denied.  Fusi appealed, but narrowed his allegations of

-4-

error and no longer argued that Atty. Chambers provided ineffective assistance of counsel. The Massachusetts Appeals Court subsequently affirmed the trial court's denial. See Commonwealth v. Fusi, 517 N.E. 2d 1303(1988) (Table). Fusi appealed to the Supreme Judicial Court ("SJC"), which denied leave to purse further appellate review. See Commonwealth v. Fusi, 519 N.E. 2d 1348 (1988) (Table).

Fusi then filed a third motion for post-conviction relief on June 1, 1989. The third motion argued that the grand jury process had been impaired and that Atty. Chambers' failure to object to the grand jury process constituted ineffective assistance of counsel. Following a non-evidentiary hearing, the trial court denied the motion. Fusi appealed and his appeal was denied by the Massachusetts Appeals Court and the SJC. See Commonwealth v. Fusi, 553 N.E. 2d 560 (1990) (Table); Commonwealth v. Fusi, 554 N.E. 2d 1214 (1990) (Table).

Fusi's fourth motion for post-conviction relief was filed on November 17, 1995. In the fourth motion, Fusi again alleged that Atty. Chambers provided ineffective assistance of counsel, this time due to his failure to object to alleged sentencing errors. After a non-evidentiary hearing, the trial court denied Fusi's request for a new trial, but ordered a new sentencing hearing due to Atty. Chambers' failure to adequately represent Fusi during sentencing. Following the new sentencing hearing, the trial

court reimposed the original sentence. Fusi appealed, but the appeal was dismissed for failure to prosecute.

On March 3, 2003, Fusi filed his fifth motion for post-conviction relief asserting several grounds, including ineffective assistance of counsel. With his motion, Fusi provided the trial court with an affidavit from now-disbarred Atty. Chambers in which Atty. Chambers admitted that (1) he received Fusi's case two days prior to trial and (2) he visited the crime scene, but never spoke with Leonard and Cathleen Bartolo, whose backyard was the crime scene and who Fusi stated would contradict some of the victim's testimony concerning the light in the Bartolos's backyard and whether she screamed on the night of the rape. Relying on Atty. Chambers' affidavit and affidavits from his mother and sister, Fusi argued that he was deprived of his Sixth Amendment right to the effective assistance of counsel because Atty. Chambers did not adequately prepare for trial.

The trial court denied Fusi's motion. Fusi appealed to the Massachusetts Appeals Court, which found no "manifest injustice" and affirmed the trial court's ruling. Fusi v. Commonwealth, 854 N.E. 2d 1266, *1-2 (2006) (Table). The SJC subsequently denied Fusi's Application for Leave to Obtain Further Appellate Review ("ALOFAR"). Commonwealth v. Fusi, 857 N.E. 2d 1094 (2006) (Table).

-6-

Fusi continued his quest for a constitutional remedy by filing a habeas petition in federal district court. To support his habeas petition, Fusi requested an evidentiary hearing. In the motion for an evidentiary hearing, Fusi argued that because Atty. Chambers completely failed to prepare for trial a presumption of prejudicial ineffective assistance of counsel was warranted.

After hearing oral arguments on the motion, the district court issued an order denying both the request for an evidentiary hearing and the habeas petition. Fusi, 588 F. Supp. 2d at 165-66. The district court implicitly denied Fusi's request for a presumption of prejudice and held that Fusi's allegations, even if accepted as true, created at best a "close call" on the issue of prejudice. Id. The district court then held that Fusi's allegations "do not overcome the deference afforded by [the Antiterrorism and Effective Death Penalty Act] to the state courts' determination that he failed to establish prejudicial ineffective assistance of counsel." Id. at 166. Accordingly, Fusi was not entitled to either an evidentiary hearing or a writ of habeas corpus. Id.

In response, Fusi applied for a Certificate of Appealability. In the application, Fusi, relying primarily on the Sixth Circuit's decision in Mitchell v. Mason, 325 F.3d 723 (6th Cir. 2003), again asserted that he was entitled to a presumption of prejudicial ineffective assistance of counsel

because of Atty. Chambers' alleged failure to prepare for trial. The district court granted the Certificate of Appealability, <u>Fusi</u> v. <u>O'Brien</u>, 626 F. Supp. 2d 135 (D. Mass. 2009), and this appeal followed.

**II.**

The critical issue on appeal is whether Fusi fully exhausted his ineffective assistance of counsel claim in state court. In order to promote principles of comity and federalism, "a federal court will not entertain an application for habeas relief unless the petitioner first has fully exhausted his state remedies in respect to each and every claim contained within the application." <u>Adelson</u> v. <u>DiPaola</u>, 131 F.3d 259, 261 (1st Cir. 1997). The doctrine of exhaustion traces its origins to the 19th century, <u>Ex parte Royall</u>, 117 U.S. 241, 251 (1886), and was codified by Congress in 1948, 62 Stat. 967.

The Supreme Court has explicated that "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." <u>Rose</u> v. <u>Lundy</u>, 455 U.S. 509, 518 (1982). Given their co-equal status in our federal structure, the doctrine ensures that state courts are afforded an adequate opportunity to adjudicate constitutional claims properly within their jurisdiction. <u>See</u> <u>Darr</u> v. <u>Burford</u>, 339 U.S. 200, 204 (1950). The doctrine also finds support in a "pragmatic recognition that

'federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review.'" Castille v. Peoples, 489 U.S. 346, 349 (1989) (quoting Rose, 455 U.S. at 519).

In the First Circuit, "a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim." Adelson, 131 F.3d at 261 (alterations added); Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994). The petitioner's ALOFAR is the "decisive pleading" and the federal claim must be presented to the state's highest court within the four corners of the ALOFAR. Adelson, 131 F.3d at 263; Mele v. Fitchburg Dist. Court, 850 F.2d 817, 823 (1st Cir. 1988). Earlier state court filings, however, provide a "backdrop" against which the ALOFAR can be read if it is ambiguous. See Clements v. Maloney, 485 F.3d 158, 163-64 (1st Cir. 2007).

Before the district court, Fusi argued that he was entitled to a writ of habeas corpus because he was denied the effective assistance of counsel in violation of the Sixth Amendment. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established the standard test for determining whether a defendant's Sixth Amendment right to counsel was violated. Under the Strickland test, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness"

and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. On the same day that Strickland was issued, the Supreme Court issued United States v. Cronic, 466 U.S. 648 (1984), another case concerning the scope of the Sixth Amendment's right to counsel. In Cronic, the Supreme Court held that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." Id. at 658. In these limited circumstances, prejudice is presumed "without inquiry into counsel's actual performance at trial." Id. at 662.

While both Cronic and Strickland concern Sixth Amendment violations, they are distinct legal claims and the difference between the two "is not of degree but of kind." Bell v. Cone, 535 U.S. 685, 697 (2002). Strickland requires a case-by-case analysis of whether counsel's deficiencies affected the outcome of a trial, while Cronic permits a presumption of prejudice if an actual or constructive denial of counsel occurs during a critical stage of the trial. These claims, while based on similar factual underpinnings, are separate and distinct. A defendant's reliance on one theory in state court does not exhaust the other. See Huntley v. McGrath, 261 F. App'x. 4, 6 (9th Cir. 2007) (finding Cronic claim unexhausted when defendant only raised Strickland

-10-

claim in state courts); Higgins v. Cain, No. 09-2330, 2010 WL 1855870, *6-7 (E.D. La. Feb. 8, 2010) (same).

In his habeas petition, Fusi argued that a Cronic presumption of prejudice was warranted because Atty. Chambers' failure to prepare adequately for trial effectively denied Fusi any counsel during the critical, pre-trial stage of the criminal proceeding. See Cronic, 466 U.S. at 659 (identifying the "complete denial of counsel" as a circumstance warranting the presumption of prejudice). For support, Fusi relied primarily on Mitchell v. Mason, a case in which the Sixth Circuit held that an attorney's complete failure to prepare for trial should be analyzed under Cronic, not Strickland. See Mitchell, 325 F.3d at 748.

The relevant question on appeal is whether Fusi presented to the SJC his argument that Cronic, not Strickland, applies to his claim of ineffective assistance of counsel. A close examination of Fusi's ALOFAR reveals not a single citation to Cronic or the Sixth Circuit's decision in Mitchell v. Mason. Instead, the ALOFAR relies exclusively upon the standard two-prong Strickland test, specifically citing that Supreme Court case five times. Instead of arguing for a presumption of prejudice, the ALOFAR argues at length that Atty. Chambers' deficient assistance caused actual prejudice. At no point does the ALOFAR argue or even imply that Fusi was entitled to a presumption of prejudice. Accordingly, the "decisive

pleading" in this appeal establishes that Fusi did not raise his Cronic claim in state court.

Moreover, Fusi's previous state court filings also did not raise his Cronic claim. In his brief to the Massachusetts Appeals Court, Fusi relied exclusively on Strickland's two-prong test. Indeed, the brief specifically mentions Strickland's prejudice prong and argues that Atty. Chambers caused actual prejudice. Additionally, in his initial brief to the trial court, Fusi again relied exclusively on Strickland, quoted the case at length throughout the brief, and argued that Atty. Chambers caused actual prejudice. While we find no ambiguity in the ALOFAR, to the extent any did exist, the backdrop against which we read the ALOFAR bolsters our conclusion that Fusi did not raise his Cronic claim in state court.

At most, Fusi's state court filings establish the factual predicate for his Cronic claim, "[b]ut setting forth the factual underpinnings of a claim is insufficient, in and of itself, to constitute fair presentment of that claim. A habeas petitioner must also elucidate the legal foundation of his federal claim." Adelson, 131 F.3d at 262. Fusi failed to elucidate any legal foundation for his Cronic claim in state court.

For the foregoing reasons, Fusi failed to exhaust fully his Cronic claim before the state court. Thus, the district court

should have dismissed his petition for a writ of habeas corpus without prejudice.

## III.

Fusi's failure to rely upon Cronic in state court is fatal to his habeas petition. Had Fusi exhausted his claim, however, he would still face a rocky slope on his constitutionally premised appeal given this circuit's hesitance to apply Cronic's presumption of prejudice to situations of "bad lawyering." See, e.g., United States v. Theodore, 468 F.3d 52, 56-58 (1st Cir. 2006); Scarpa, 38 F.3d at 13. This circuit has made clear that "seldom [do] circumstances arise that justify a court in presuming prejudice (and, concomitantly, in forgoing particularized inquiry into whether a denial of counsel undermined the reliability of a judgment)." Ellis v. United States, 313 F.3d 636, 643 (1st Cir. 2002). With respect to an incompetent attorney, the attorney's incompetence must rise to the level of a complete denial of counsel; "bad lawyering, regardless of how bad" is insufficient. Scarpa, 38 F.3d at 13 (quoting McInerney v. Puckett, 919 F.2d 350, 352-53 (5th Cir. 1990)).

Supreme Court precedent dictates our narrow application of the Cronic presumption of prejudice. In Cronic, the Court identified three specific circumstances that warranted the presumption. See 466 U.S. at 659-662. The first and "most obvious" is a "complete denial of counsel . . . at a critical

stage." Id. at 659. The second occurs "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Id. And, the third occurs when the circumstances are such that "even a fully competent [attorney], could [not] provide effective assistance of counsel." Id. at 659-60. Circumstances falling into the third category include the appointment of counsel "so close upon trial as to amount to a denial of effective and substantial aid." Id. at 660 (quoting Powell v. Alabama, 287 U.S. 45, 53 (1932)).

Turning to the merits of Cronic's petition, the Court held that the circumstances surrounding his conviction did not warrant a presumption of prejudice. Id. at 666. The Court refused to presume prejudice despite the fact that the charged offense was a complicated mail fraud scheme and the defense attorney was appointed twenty-five days prior to trial, had no criminal law experience, and never tried a jury case before. Id. According to the Court, these facts "are relevant to an evaluation of a lawyer's effectiveness in a particular case, but neither separately nor in combination do they provide a basis for" presuming prejudice. Id. at 663.

Since issuing Cronic, the Supreme Court has consistently declined invitations to interpret the case expansively. In Bell v. Cone, the defense attorney, during sentencing in a capital case, established that the defendant was a war veteran who received the

Bronze Star and potentially suffered from Vietnam Veterans Syndrome. See 535 U.S. at 691-92. The defense attorney also successfully objected to the introduction of the victims' photographs, but "he did not interview witnesses aside from those relevant to the guilt phase; he did not present testimony relevant to mitigation from the witnesses who were available; and he made no plea for [the defendant's] life or closing remarks after the State's." Id. at 708 (Stevens, J., dissenting). Despite these failings, the Court held that the defendant was not entitled to a presumption of prejudice because the attorney did not entirely fail to subject the prosecution's case to adversarial testing. See id. at 697 (majority op.).

Two years later, in Florida v. Nixon, 543 U.S. 175, 178 (2004), the Supreme Court again refused to presume prejudice. This time the defense counsel conceded the defendant's guilt during trial without the defendant's express consent. In holding that such conduct did not warrant a presumption of prejudice, the Court described Cronic as a "narrow exception" to Strickland that should be applied "infrequently." Id. at 190.

Following the Supreme Court's instructions, this circuit has been reluctant to apply Cronic broadly. Importantly, we have not presumed prejudice in situations strikingly similar to the one before us today. For example, in Scarpa, we considered whether to apply the Cronic presumption to a situation where the defense

-15-

attorney did not attempt to impeach government witnesses, effectively conceded the disputed elements of the charged crimes, and whose closing argument solicited the jury to accept the government's testimony. 38 F.3d at 9-11. We described the defense attorney's legal theory as "half-baked" and his blunders as "not only fail[ing] to assist in fashioning a defense but also cement[ing] the prosecution's theory of the case." Id. at 10-11. We therefore concluded that the defense attorney's conduct fell below an objective standard of reasonableness. Id. at 11.

We did not, however, hold that defense counsel's ineptitude warranted a presumption of prejudice. Instead, we recognized that Cronic is a narrow exception to Strickland's rule and should only apply to conduct "so antithetic to effective assistance . . . that a case-by-case analysis simply is not worth the cost of protracted litigation." Id. at 12. We also explained that "attorney error, even when egregious, will almost always require analysis under Strickland's prejudice prong." Id. at 14. "Put bluntly, because [defense counsel's] errors are more an example of maladroit performance than of non-performance, Strickland necessitates an inquiry into the existence of actual prejudice." Id. at 15.

More recently, in Theodore we were asked to apply the Cronic presumption to trial counsel's incompetent pre-trial investigation. In Theodore, we recognized that trial counsel's

-16-

pre-trial investigation was "incomplete." 468 F.3d at 55. While trial counsel reviewed some documents, he wholly ignored several CD ROMs that contained all of the government's evidence. Id. Trial counsel also failed to interview any witnesses beyond the defendant and openly stated that he planed "to play it by ear and shoot from the hip." Id.

Despite trial counsel's woefully inadequate preparation, we refused to presume prejudice because while the "representation of [the defendant] suffered significant shortcomings, it was not tantamount to non-representation." Id. at 57. Trial counsel reviewed boxes of documents, requested copies of relevant documents from the government, filed pretrial motions, and exercised several peremptory challenges. Id. at 57. During trial, counsel cross-examined government witnesses, suggested defense themes, and introduced exhibits. Id. at 57. This conduct, while still below an objective level of reasonableness, "was not so deficient that [the defendant] should have been relieved from demonstrating prejudice under Strickland." Id. at 57-58.

Like the attorneys in Scarpa and Theodore, Atty. Chambers' performance may have fallen below an objective standard of reasonableness, but was not of the character as to constitute constructive denial of counsel "justify[ing] a presumption that [the defendant's] conviction was insufficiently reliable to satisfy the Constitution." Cronic, 466 U.S. at 662. In the affidavit that

-17-

Fusi submitted with his habeas petition, Atty. Chambers stated that prior to trial he reviewed the Commonwealth's discovery file, the indictment, the grand jury minutes, and the police report. Atty. Chambers also stated that he interviewed Fusi's sister and mother prior to trial, interviewed Fusi on the day of trial, and visited the crime scene. Although Atty. Chambers received the case only two days prior to trial and admitted he would be "shooting from the hip," he provided Fusi with some, albeit limited, representation thereby precluding a presumption of prejudice under Cronic. Fusi may have retained a bad lawyer; he was not, however, denied counsel.

We take no view as to whether Mitchell v. Mason was correctly decided. We do note, however, that the Sixth Circuit opinion does not dissuade us from our present conclusion. In Mitchell, the defense counsel in a capital case met with the defendant for only six minutes spread over three meetings prior to trial, failed to contact or interview known material witnesses, ignored the defendant's repeated requests for consultation, and was suspended from the practice of law for the thirty days preceding trial. Id. at 744-47. The Sixth Circuit concluded that the defense counsel was "utterly absent" during the pre-trial stages of the criminal proceeding and held that Cronic, rather than Strickland, should apply to the defendant's ineffective assistance of counsel claim. Id. at 748.

In this case, unlike in Mitchell, there is evidence that Atty. Chambers performed something more than a minim of work during the pre-trial phase. As noted above, he reviewed the Commonwealth's evidence, the indictment, the grand jury minutes, and the police report; he visited the crime scene; he met with Fusi's sister and mother; and he met with Fusi on the day of trial. These facts distinguish this case from Mitchell in which the defense attorney did nothing prior to trial and was not licensed to practice law the entire month preceding trial. Unfortunately for Fusi, he was not denied counsel, either constructively or otherwise. The Constitution requires representation of counsel, but it does not mandate representation by the equal of Clarence Darrow.

Accordingly, had Fusi exhausted his Cronic claim in the state courts, his claim would fail on its merits.

## IV.

For the foregoing reasons, we VACATE and REMAND with instructions to dismiss Fusi's petition for a writ of habeas corpus without prejudice. Each party to bear their own costs.